903 F.2d 844
 284 U.S.App.D.C. 226
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Lee Thomas RICHARDSON, a/k/a Lee Richardson, Appellant.
 No. 88-3154.
 United States Court of Appeals, District of Columbia Circuit.
 June 1, 1990.
 
 Before HARRY T. EDWARDS and SILBERMAN, Circuit Judges, and SPOTTSWOOD W. ROBINSON, III, Senior Circuit Judge.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on appeal from the United States District Court for the District of Columbia, and was argued by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). It is
 
 
 2
 ORDERED and ADJUDGED that the judgment of conviction be and hereby is affirmed for the reasons stated in the accompanying memorandum.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Lee Thomas Richardson was convicted of the theft of $5,000 from an interstate shipment of money. See 18 U.S.C. Sec. 659 (1988). He challenges the District Court's denial of his pretrial motion to suppress his confession of guilt and, as well, the court's curtailment of cross-examination at a hearing held on that motion. We perceive no basis for upsetting those rulings.
 
 
 5
 Richardson was suspected of stealing the $5,000 from an armored car he was driving for his employer. In furtherance of an investigation by the Federal Bureau of Investigation (FBI), Special Agents Kerr and Rendin invited Richardson to the Washington Field Office for an interview regarding the missing money. Richardson appeared voluntarily, denied taking the money, and twice expressed his willingness to undergo a polygraph examination. The examination was administered after Richardson was told that he was under no obligation to submit thereto and was fully informed of his Miranda rights. See Miranda v. Arizona, 384 U.S. 436 (1966).
 
 
 6
 Agent Rogers concluded that Richardson's answers during the examination disclosed signs of deceptive behavior, and confronted him with the unfavorable results. The accounts of what transpired thereafter diverge in some respects. Richardson testified at the suppression hearing that Rogers encouraged him to confess, and remarked "that in some courts that the polygraph results are admissible" as evidence. Transcript of Hearing on Motions (Aug. 4, 1988) (Tr.) 16. As Richardson adhered to his position that he was not the culprit, Rogers called upon Agent Rendin to continue the interview and left the room. According to Richardson, Rendin "seemed upset or angry," and stated that "because I failed the polygraph test, ... they had me. And that if I didn't admit to it, that he would follow me until he do (sic) get something on me because he knew I am guilty of what I did." Tr. 18.
 
 
 7
 Agent Kerr later replaced Rendin in the interview room. By Richardson's version, Kerr, after excusing Rendin's behavior, suggested that the FBI knew that Richardson was guilty, that Richardson was similarly aware of his guilt, and that he would be doing himself a favor by confessing. During further discussion, Richardson asked Kerr what the consequences would be if he admitted that he stole the money. Kerr, Richardson said, responded that probation was "a possibility" if Richardson did so and returned the money. Tr. 31. Richardson then confessed to Kerr; he repeated the confession to Agent Rendin, and it was reduced to writing. Appellant initialed each page and signed the completed document. See Appendix (App.) pt. G.
 
 
 8
 The District Court found that much of Richardson's testimony was truthful. The polygraph examiner indeed had informed Richardson that he had "failed" one question, stated that the machine "does not lie," alluded that the results were or might be admissible in some courts, and encouraged Richardson to admit to taking the money. United States v. Richardson, No. 88-063 (D.D.C) (Aug. 9, 1988) (memorandum and order), App. pt. D at 2. The court further found that Agents Rendin and Kerr had engaged in a "good guy/bad guy" routine, and that Rendin had threatened "a la Jean Val Jean to follow [Richardson] for the rest of his life because [Rendin] knew he would 'get' [Richardson]." Id.
 
 
 9
 The District Court noted, however, that Richardson's own testimony established that "Agent Rendin never made any promises of leniency, never used physical force, and never made any specific threats other than his threat to 'follow' [Richardson] until he 'got' him." Id. at 2-3. The court found that Agent Kerr did not offer Richardson any sort of leniency prior to the confession, and that Agent Rogers "did not identify the admissibility of polygraphs in this or any other specific jurisdictions." Id. at 2. On this basis, the court concluded that the circumstances surrounding the confession were not "sufficiently coercive to preclude admission of [the] confession." Id. at 4.
 
 
 10
 Our mission is to determine whether Richardson's confession was "the product of an essentially free and unconstrained choice by its maker," Culombe v. Connecticut, 367 U.S. 568, 602 (1961), and to do so upon a view of the " 'totality of the circumstances.' " Wyrick v. Fields, 459 U.S. 42, 47(1982) (quoting Edwards v. Arizona, 451 U.S. 477, 483 (1981)). We bear in mind the Supreme Court's recent observation that "[w]hile each confession case has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct." Colorado v. Connelly, 479 U.S. 157, 163-164 (1986). We are mindful, too, that in reviewing the District Court's decision regarding the voluntariness of Richardson's confession, " 'we are rightly guided by the trial judge insofar as this must depend on matters, like demeanor, that cannot be captured in a cold record.' " United States v. Yunis, 859 F.2d 953, 957 (D.C.Cir.1988) (quoting United States v. Poole, 495 F.2d 115, 122 (D.C.Cir.1974)). See also United States v. Baird, 851 F.2d 376, 379-380 (D.C.Cir.1988).
 
 
 11
 In arguing that his confession was involuntary, Richardson points to a variety of circumstances: the use of the unfavorable results of the polygraph, the "good guy/bad guy routine," the threat to follow Richardson until incriminating evidence turned up, and the claimed suggestions of leniency. Considering these factors both singly and combinationally, we conclude that the confession was not unlawfully coerced.
 
 
 12
 Richardson concedes that confrontation with the outcome of the polygraph examination, in and of itself, was not inherently coercive, and did not, without other factors, render the confession involuntary. Wyrick v. Fields, supra, 459 U.S. at 49 (to hold otherwise would be "an unjustifiable restriction on reasonable police questioning"). It is also clear that Agent Rendin's approach did not amount to impermissible duress. Believing Richardson to be the perpetrator, Rendin let it be known that he would continue to probe to the fullest, but he gave no indication that his investigation would take on a threatening or otherwise unlawful character. That Richardson may have been uneasy about Rendin's tenacity does not change the result. See, e.g., United States v. Pelton, 835 F.2d 1067, 1072-1073 (4th Cir.1987), cert. denied, 108 S.Ct. 1741 (1988) ("assertion that FBI would conduct full scale investigation ... might have been uncomfortable for [the accused], but it is hardly coercive").
 
 
 13
 We also agree with the District Court that Richardson was not induced to confess by any promise of leniency. Richardson himself admits that no such promise was ever made, and that the agents mentioned probation only as a possible punishment. See United States v. Pelton, supra, 835 F.2d at 1073 ("general encouragement to cooperate is far different from specific promises of leniency"); United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir.1985) (" 'truthful and noncoercive statement of the possible penalties which an accused faces,' may be given to the accused without leading to an involuntary statement") (quoting United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir.1978)). As for Agent Rogers' statement about the admissibility of polygraph results as evidence, Richardson concedes that Rogers never represented that they would in fact be admissible in any criminal prosecution subsequently launched. Indeed, the Rogers' statement pointed as much to possible impotence of the polygraph results as it did to their potential vigor. Accordingly, we affirm the District Court in its denial of Richardson's motion to suppress his confession as involuntary.
 
 
 14
 Richardson also attacks the District Court's circumscription of his counsel's cross-examination of Agents Rendin and Kerr during the hearing on the suppression motion. Specifically, Richardson complains that the court impermissibly blocked questions pertaining to "other suspects in the case." Brief for Appellant at 14. The purpose of the questioning was to show that the absence of other viable suspects "resulted in the agents exerting a little more pressure than was proper under the circumstances" in attempting to secure a confession from Richardson. Id.
 
 
 15
 Argument that the court's action violated Richardson's constitutional right to confrontation by accusing witnesses is unavailing. District courts have wide discretion in determining relevance of evidence. E.g., United States v. Crenshaw, 698 F.2d 1060, 1063 (9th Cir.1983). The testimony sought had marginal relevance, if any at all, and in any event appears to have been outside the proper scope of cross-examination. See, e.g., United States v. Stamp, 458 F.2d 759, 773 (D.C.Cir.1972). We thus do not disturb the District Court's ruling on this score.