**UNITED STATES, Appellant,**

v.

**Nathaniel THOMAS, Appellee.**

**No. 91–246.**

District of Columbia Court of Appeals.

Argued June 3, 1991.

Decided July 31, 1991.

Nancy R. Page, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Sydney J. Hoffmann, Asst. U.S. Attys., Washington, D.C., were on the brief for appellant.

Veronice A. Holt, Washington, D.C., appointed by this court, for appellee.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Appellee, a Postal Service employee, is charged with the distribution of marijuana in violation of D.C.Code §§ 33–541(a)(1),

(2)(D) (1988). This is an expedited pretrial government appeal from the grant of a motion by appellee to suppress a statement he made to postal inspectors. The trial court ruled that the statement was inadmissible because it was involuntarily given.[1] Finding that the trial court relied on an erroneous legal principle in making its ruling, we reverse the determination of involuntariness and remand for further proceedings.

The broad framework within which the challenged statement was made, omitting certain arguably coercive elements to be mentioned later, may be summarized as follows. Appellee, a college graduate with a degree in business management, was summoned from his work to report, accompanied by his supervisor,[2] to the office of the Postal Inspection Service, which he entered through a door locked at least on the outside. Neither he nor his supervisor knew of the reason for the call. Appellee was taken into one of the Inspection Service's interview rooms, where he was closeted with Postal Inspectors Fry and Pinto. The purpose of the meeting was to recruit appellee as a confidential informant, using an alleged marijuana offense as an incentive.

The inspectors began the meeting with a full exposition of all of the evidence compiled by the Inspection Service against the defendant of the marijuana offense; *viz.,* that he had sold marijuana out of his car in a McDonald's parking lot to one of the Service's confidential informants. The inspectors indicated the evidence's overwhelming character[3] and their lack of interest in anything he could add to their case.

In the course of the interview, according to the Postal Inspectors, appellee said, "I should have known there's something wrong with the bitch [the confidential informant]." He asserted that he didn't deal in drugs, but that as a favor, he had bought $20 worth of marijuana and then "gave the girl the reefer and she gave [me] $20 while in [my] car."

In response to the Postal Inspectors' attempt to recruit him as an undercover agent, appellee said that he wanted to think about it for a couple of days. Upon leaving the meeting, appellee promptly retained counsel, who told the Postal Inspectors that all future communications should come through her. A few days thereafter, appellee was arrested and his car impounded.

■ In making his written ruling excluding the statement from evidence, the trial court stated as a controlling legal principle that "a confession is necessarily involuntary if it is obtained by any direct or implied promises, however slight, or by exertion of any improper influence," citing *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897).[4]

However, as the Supreme Court made clear three weeks after the trial court's decision in this case, "this passage from *Bram* ... under current precedent does not state the standard for determining the voluntariness of a confession." *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991). Rather, the court indicated, the test is whether, under the totality of the circumstances, the will of appellee was "overborne in such a way as to render his confession the product of coercion." 111 S.Ct. at 1253. Otherwise put, the test is whether an individual's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte,* 412 U.S. 218,

---

1. No warnings were given to appellee pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court explicitly did not reach the issue of custodial interrogation since it found that the statement was involuntary, nor was the issue raised or briefed on appeal. Hence, on remand this issue remains entirely open for resolution.

2. Appellee's supervisor accompanied him to the Postal Inspection Service office but left him there.

3. Inter alia, there were taped conversations between appellee and the informant.

4. Also cited was *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1963), which quotes from *Bram.*

225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973).

"'[T]he ultimate issue of "voluntariness" is a legal question....'" *Fulminante, supra,* at 1252 (quoting *Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985)). While the trial court here in its conclusions of law stated that the confrontation was "rife with coercion," and that "the implied and direct promise of lenience contrasted with the threat of adverse action was unmistakable," the precise underlying factual bases relied on by the trial court are not specifically set forth. However, taken most favorably to appellee, they essentially appear to be the following. First, appellee as a postal employee reasonably believed that he was under an obligation to cooperate with the Postal Inspectors. In *United States v. Baird,* 271 U.S.App.D.C. 121, 851 F.2d 376 (1988), however, the court held that even though a U.S. Coast Guard officer had been ordered to appear at an interview and was conditioned to obeying orders, he had not been subjected to coercive conduct that caused him to make an involuntary confession. Appellee distinguishes this case by noting that the interrogator there specifically said that the interview was voluntary and the officer was free to leave.[5] Whether a person has been told he or she is free to leave, besides bearing

directly on the issue of custodial interrogation, *see* note 1 *supra,* may be a factor in the voluntariness determination. On the facts of this case, however, we conclude that the issue of just when appellee was told he was free to leave cannot control the question whether his will was overborne.[6]

The other types of threats and promises relate to various consequences that might flow from appellee's decision with respect to serving as an undercover agent: that if appellee cooperated, Fry would so advise the Postmaster and the U.S. Attorney's office when the offense was reported, that his car would not be seized, and that cooperation might possibly lead only to a job suspension, but conversely, without such cooperation, his job, car, and criminal arrest and prosecution would be at stake.[7]

We think that such portrayals of consequential aspects of potential courses of action do not, in the circumstances here, rise to the violation of the constitutional command that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

Supreme Court cases involving voluntariness

have focused upon the crucial element of police overreaching. While each confession has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a

---

5. The parties here are in sharp disagreement as to the time when the appellee was told that he was "free to go and was not going to be arrested that day." While the trial court found that such a statement was made, it is not clear at what point in the interview it was made.

6. Also distinguishable is *United States v. Friedrick,* 268 U.S.App.D.C. 386, 842 F.2d 382 (1988), decided before *Baird* and cited in a footnote in appellee's brief. There, an FBI agent had, pursuant to an explicit FBI regulation, been required to answer questions in several interviews, in return for which he was immunized against use of his answers in any criminal prosecution. *Id.* at 389, 396–400, 842 F.2d at 385, 392–96. The issue was whether the agent reasonably believed that status continued into the interview where he made the incriminating statement. Those circumstances bear no resemblance to the case before us. Moreover, appellant's belief here related to an obligation to cooperate in a proceeding aimed at his recruit-

ment, and could not on the facts here reasonably extend to a required waiver of Fifth Amendment rights as in *Friedrick.*

7. The harshest of the statements, according to appellee's own testimony, were Fry's assertions that if appellee did not choose to cooperate, Fry "would come down on the floor and slap the cuffs on me the next day and lead me away," and that he would "take my car, my job and fuck my life up." While it is, of course, true that one may not be required to relinquish one's Fifth Amendment privilege on threat of a loss of job, *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), these reputed assertions by Fry were made after appellee had already spoken about his role in the crime and in the context of consequences of not becoming an informant. Therefore, they form "no reasonable basis for concluding that [the government] attempted to attach an impermissible penalty to the exercise of the privilege against self-incrimination." *Minnesota v. Murphy,* 465 U.S. 420, 437, 104 S.Ct. 1136, 1148, 79 L.Ed.2d 409 (1984).

substantial element of coercive police conduct. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.

*Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). Among the examples of overreaching cited by the court, as listed in *Baird, supra,* were a four-hour interrogation while the accused was incapacitated and sedated in an intensive care unit, *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); eight hours of intense interrogation in a small, crowded room despite the police's knowledge of the suspect's history of mental problems, *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); and interrogation of a suspect known to have been administered a drug with truth-serum properties, *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Most recently, in *Arizona v. Fulminante, supra,* the Court found coercion in the incarcerated defendant's fear of physical violence, absent protection from the government agent, at the same time acknowledging that the "question is a close one." 111 S.Ct. at 1252. The interview process here, while plainly not without its inducive elements, reflects no such police oppression or overreaching approaching the type described in cases upholding suppressions.[8]

Furthermore, it is important to note the observation in *Colorado v. Connelly,* quoted above, that the coercion must be "causally related to the confession." Here, as the trial court stated, the purpose of the meeting was to obtain an undercover agent. "The meeting was not, and was not intended to be, an interview, interrogation, investigation, fact finding, or any other data gathering effort." The statements made to appellee about consequences of his decision were in reference to his cooperation as a confidential informant, not in re-

gard to confessing to the crime. While the inspectors' experience was that "such meetings resulted in incriminating statements 50% of the time," we find it difficult to find record support for the trial court's conclusion of law that "the government intended the foreseeable consequences of its acts—to obtain an otherwise impermissibly coerced confession under the guise of recruitment." In any event, for the reasons stated, we cannot agree with the premise that, on this record, the statement was "impermissibly coerced" as a constitutional matter.

The trial court's order granting the motion to suppress is set aside and the case remanded for further proceedings.

*So ordered.*

---

8. *Cf. Beasley v. United States,* 512 A.2d 1007, 1016 (D.C.1986) (promises of leniency insufficient to "overbear [suspect's] free will"), *cert. denied,* 482 U.S. 907, 107 S.Ct. 2485, 96 L.Ed.2d 377 (1987); *United States v. Guerrero,* 847 F.2d

1363 (9th Cir.1988) (speculation that cooperation will have positive effect and promise to inform prosecutor of cooperation and recommend leniency does not render statement involuntary).